OPINION OF THE COURT
Phyllis Orlikoff Flug, J.
The defendant, charged, inter alla, with robbery in the first degree, has moved for an order precluding identification testimony, by the two victims, on the ground that the behavior of the police in conducting the lineup was unconscionable and in direct violation of the defendant’s right to fairness and due process. The defendant did not allege a lack of probable cause to conduct the lineup.
A Wade hearing was conducted before the court on January 5, 7, and February 16, 1993. The People called New York City Police Detective Joseph Branzetti and one of the alleged victims, Mitchel Puertas. The defendant called Bert Nisonoff, Esq. The court finds all of their testimony to be in the main candid and credible. Based upon such testimony the court makes the following findings of fact and draws these conclusions of law:
FINDINGS OF FACT
On June 28, 1992, at approximately 5:40 a.m., Mitchel Puertas and Walter Adams were allegedly assaulted and robbed by the defendant. Mr. Puertas testified that he did not know defendant’s name but had observed him on five or six earlier occasions writing the words "Take 2” on the walls of buildings. Thereafter, Mr. Puertas learned, through other graffiti artists, that the name of the writer (Take 2) was Daniel Malone. He reported this information to the police.
On July 14, 1992, sometime after 6:00 p.m., the defendant and his attorney, Bert Nisonoff, arrived at the 110th Precinct to voluntarily submit to a prearranged lineup. Defendant was placed in a viewing room on the second floor. The two witnesses arrived shortly after 7:00 p.m. and were kept on the first floor until the lineup was held. Five fillers (all police officers) were assembled by Detective Branzetti. Prior to the actual holding of the lineup, the defendant was given the opportunity to select his number (No. 5) in the lineup. Upon viewing the participants, all of whom were seated, Mr. Adams stated that he recognized No. 5 (the defendant) as the "one *88 that grabbed my chain”. Mr. Adams was then led from the viewing room through the only door in or out. Mr. Nisonoff, who was present during the identification procedure, was not permitted to accompany the witness from the area. Fearing that perhaps there would be some signaling by either Mr. Adams or the courier police officer, as to where the defendant sat in the lineup, Mr. Nisonoff asked a Sergeant Nicastro, who was present in the viewing room, to allow the defendant to change his seat number. The Sergeant refused. Mr. Nisonoff also objected to the ages of the lineup fillers as being considerably older than the defendant.
After being brought into the viewing room by the same officer who escorted Mr. Adams, Mr. Puertas identified the defendant (No. 5) as the "one that hit me”.
CONCLUSIONS OF LAW
The court finds that defendant’s argument regarding the composition of the lineup is without merit. "[Tjhere is no requirement that a defendant in a lineup be surrounded by individuals nearly identical in appearance * * * So long as there is a sufficient degree of resemblance between the fillers and the defendant” (People v Allah, 158 AD2d 605, 606 [2d Dept 1990]; People v Wiley, 137 AD2d 735 [2d Dept 1988]). Having viewed a photograph of the lineup, the court concludes that the differences in age between the defendant and the fillers were constitutionally insignificant (see, People v Thompson, 143 AD2d 858 [2d Dept 1988]).
The court now turns to the defendant’s contention that the People have not satisfied their burden of demonstrating the reasonableness of the police conduct and procedures followed.
Suspected individuals are not entitled to counsel at preaccusatory lineups (see, Matter of Jamal C., 75 NY2d 893, 895; People v Coates, 74 NY2d 244, 249). However, once activated, the right incorporates a requirement that defense counsel be afforded a reasonable opportunity to attend (People v Coates, supra). Having thus established defendant’s right to counsel’s presence, the actions of counsel and their observations must be given some recognition by the police authorities, as well as the courts, if that right is to have any meaning. Custom and courtesy have evolved to the point that defendants have the choice of their own number and position in the *89 lineup. Defense counsel now seeks to expand that right when there is more than one viewing of a lineup within a short period of time. Defendant’s attorney has articulated a reasonable fear and suspicion that in the situation at bar (with only one door allowing entrance and exit to the viewing room) signals and/or conversations could be had between the witnesses or viewers and/or the police escorts. He expressed this concern to the Sergeant who saw fit to ignore his arguments and denied counsel the opportunity of accompanying the first witness as he left the room. Counsel then proceeded to request that his client change his number and seat in the lineup. The denial of this request, in light of the conditions present, in this court’s view, makes defendant’s right to have counsel at the lineup illusory. Without requiring defense attorneys to appear with co-counsel, or some other member of their staff that would allow them the full opportunity to witness the entire procedure regarding the witness, the alternative of having a defendant change his number and place in the lineup is a small inconvenience and insignificant use of time when compared to the potential prejudice to the defendant. In terms of economics, it should only entail the taking of an additional instant photograph by the police of the second arrangement. While the court has been unable to find any precedent for this procedure, it is clear that the refusal constituted unreasonable action by the police and compromised the integrity of the identification.
Accordingly, the testimony by Mr. Puertas (the second viewer) regarding his lineup identification is precluded at trial. However, since the initial identification procedures utilized were not impermissibly suggestive, thereby obviating the possibility of a "tainted” and unreliable in-court identification and, further, since Mr. Puertas testified to prior observations of defendant and that he was able to see his face before the attack, there is sufficient evidence to support an independent basis for him to attempt an in-court identification (see, People v Williams, 150 AD2d 821 [2d Dept 1989]; People v Whack, 148 AD2d 560 [2d Dept 1989]).
In view of the foregoing, the witness Walter Adams may attempt an in-court identification and testify as to his lineup identification while the witness, Mitchel Puertas, may only attempt an in-court identification of the defendant.